**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PETER VIGUE,

          Plaintiff,

      v.                           Case No.: 3:19-cv-00186-TJC-JBT

DAVID B. SHOAR, in his official capacity
as Sheriff of St. Johns County,

          Defendant.

_____ /

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON DAMAGES**

Plaintiff Peter Vigue, by and through undersigned counsel, files his supplemental brief on damages. (ECF 77.) On February 12, 2019, Vigue initiated this lawsuit alleging deprivations of his constitutionally protected right to free speech to hold a sign with words conveying messages of need and requesting charity. (ECF 1.) Vigue alleged that two state statutes, § 316.2045 and § 337.406(1), were unconstitutional on their face and as-applied to him by official policy, practice or custom of Defendant Sheriff Shoar, in his official capacity as Sheriff of St. Johns County. (*Id.*) Vigue requested declaratory judgment, injunctive relief, and compensatory damages. (*Id.* at 22-23.) On May 6, 2019, this Court granted Vigue's Motion for Preliminary Injunction, restraining the Sheriff from enforcing Florida Statute § 316.2045 against Vigue individually. (ECF 32.)

On October 12, 2020, this Court granted Vigue's Motion for Partial Summary Judgment on his claims that the statutes were facially unconstitutional (ECF 77, at 16), and ordered that declaratory judgment and permanent injunctive relief were to be

entered at the conclusion of the case (*id.* at 48-49).[1] This Court reserved ruling on Vigue's entitlement to compensatory damages until Vigue submitted a proffer of the legal and factual basis for the requested relief. (*Id.* at 46-48.) Caselaw supports the conclusion that Vigue is entitled to compensatory damages, and the evidence demonstrates that he suffered actual injury caused by Defendant's deprivations of his rights by application of the unconstitutional state statutes to prohibit and punish Plaintiff for his protected speech.

## I.    The Sheriff is liable for violations of Vigue's constitutional rights.

As this Court already held that the two challenged state statutes are facially unconstitutional, the legal significance of this ruling is that no set of circumstances exist under which the statutes would be valid. (*Id.* at 17.) As the statutes are therefore incapable of constitutional application, the Sheriff's enforcement of those statutes as-applied to Vigue's constitutionally protected speech under the particular facts of this case is likewise unconstitutional. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984) (in cases raising claims that statutes are both unconstitutional as-applied to plaintiffs and on their face, "a holding of facial invalidity expresses the conclusion that the statute could never be applied in a valid manner"). By contrast, if the Court had upheld the constitutionality of those provisions of the statutes that the Sheriff applied to Vigue, he would not be entitled to

---

[1] Defendant Shoar subsequently filed a notice of filing an interlocutory appeal, challenging the entry of a permanent injunction against Defendant. (ECF 78.) Defendant has not filed a motion to stay the district court proceedings while the interlocutory appeal proceeds.

actual damages because his as-applied challenge would have failed. *Granite State Outdoor Advert., Inc. v. City of St. Petersburg, Fla*., 348 F.3d 1278, 1283 (11th Cir. 2003) (plaintiff not entitled to actual damages where as-applied challenge failed even where it succeeded on a portion of facial challenge to challenge provisions of ordinance that were never applied to plaintiff).

The Sheriff's application of the statutes to Vigue demonstrate repeated violations of his constitutional rights over the past four years. (ECF 77, at 5-14; ECF 59, at 5-9.) Vigue suffered actual injury, as discussed in more detail below, in the form of mental and emotional distress and loss of liberty that is compensable in monetary damages under the law of 42 U.S.C. §1983. *See Owen v. City of Independence, Mo*., 445 U.S. 622, 651 (1980) ("A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees…"). The Sheriff's enforcement of the statutes against Vigue pursuant to Sheriff's policy (ECF 77, at 21-27) was the proximate cause of damages sustained by Plaintiff. *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000).

## II.    Vigue is entitled to compensatory damages to compensate for injuries caused by the deprivation of his constitutional rights.

This Court should find that Defendant is liable to Vigue for compensatory damages as a matter of law because Defendant has caused Vigue actual injury through enforcement of the unconstitutional statutes. The basic purpose of damages awards under 42 U.S.C. § 1983 is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 253-54 (1978); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)

("Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'").

There is no immunity for damages claims for injuries caused by execution of a government's policy or custom. *Owen*, 445 U.S. at 651. Damages must compensate for actual injuries, and damages cannot be presumed based on the abstract value of the constitutional right at issue. *Memphis Cmty. Sch. Distr. v. Strachura*, 477 U.S. 299, 310 (1986); *see also Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir. 1980) ("mere proof of the violation of a right" will not support award of compensatory damages).[2] A plaintiff suing for violation of rights under 42 U.S.C. § 1983 is therefore entitled to compensatory damages only upon proof of actual injury. *Carey*, 435 U.S. at 261-62.

The Supreme Court's holdings in *Carey* and *Memphis* demonstrate that "it is the *injury*, not a precise measure of damages, that must be clearly established in the record before a plaintiff may recover any damages." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1203 (3d Cir. 1986) (Higginbotham, J., concurring) (emphasis in original). Where there is a constitutional violation and "there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Kerman v. City of N.Y.*, 374 F.3d 93, 124 (2d Cir. 2004).

---

[2] This decision is binding on the Eleventh Circuit, as is all Fifth Circuit precedent prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Absent proof of actual injury, deprivation of constitutional rights may be vindicated through the award of nominal damages. 5.13 Civil Rights – 42 U.S.C. § 1983 Claims – Damages, 11th Circuit Civil Pattern Jury Instructions (2020); *Carey*, 435 U.S. at 266; *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1262 (11th Cir. 2006) (only violation of constitutional right is required, not actual injury, to recover nominal damages). The cases cited by this Court (ECF 77, at 45-48) are consistent with the proposition that nominal damages are appropriate for violations of First Amendment or other fundamental rights if a plaintiff establishes a violation "but cannot prove actual injury sufficient to entitle him to compensatory damages." *Pelphrey v. Cobb Cnty., Ga.*, 547 F.3d 1263, 1282 (11th Cir. 2008); *Familias Unidas*, 619 F.2d at 395 (plaintiff "failed to adduce evidence of compensable injury from the application of the unconstitutional statute sufficient to support an award of actual damages" and instead finds entitlement of nominal damages);[3] *Gonzalez v. Sch. Bd. of Okeechobee Cnty.*, 250 F.R.D. 565, 570 (S.D. Fla. 2008) (nominal damages available for violation of the First Amendment);[4] *see also News & Sun-Sentinel Co. v. Cox*, 702 F. Supp. 891, 903 (S.D. Fla. 1988) (where newspaper publisher's evidence concerning

---

[3] In *Familias Unidas*, for example, the Fifth Circuit held that the leader of an association that received an unconstitutional demand to disclose its membership list, but did not share the list or suffer any harm associated with the demand, had "failed to prove any actual, compensable injury stemming from the receipt of the…demand for disclosure." 619 F.2d at 402.

[4] The plaintiff only sought nominal damages, therefore the court was not deciding between compensatory or nominal damages in case that involved a pre-enforcement First Amendment challenge to a school board policy. The issue was whether nominal damages were authorized in a First Amendment case, which the court decided in the affirmative.

monetary damages in First Amendment case was too speculative, Court awarded nominal damages instead).

These cases do not establish, however, that *only* awards of nominal damages are authorized in First Amendment cases. To the contrary, where "the uncontroverted facts of th[e] case establish actual injury," it is error to limit award to nominal damages. *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1088 (11th Cir. 1986); *see also Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) ("Supreme Court expressly recognized that compensatory damages may be awarded once actual injury is shown despite the fact that the monetary value of the injury is difficult to calculate).

Consistent with these principles, compensatory damages have been allowed in First Amendment cases in this circuit where there is proof of actual injury caused by the violation. *See, e.g.*, *Celli v. City of St. Augustine*, 214 F. Supp. 2d 1255, 1263 (M.D. Fla. 2000) (affirming jury verdict awarding $23,500 in compensatory damages when police enforced unconstitutional ordinance to prohibit him from displaying or selling his artwork on one day);[5] *Pesci v. Beloff*, Case No. 2:10-cv-428, 2017 WL 11475269, at *12-13 (M.D. Fla. 2017) (compensatory damages appropriate for First Amendment violation when civilly confined plaintiff suffered actual injuries while placed in wing restriction), report adopted by 2018 WL 10140156 (M.D. Fla. 2018);

---

[5] Although the district court opinion affirming the damages award in *Celli* appears to characterize the award as one for the intangible value of free speech rights (ECF 77, at 47-48), which would be impermissible under the relevant legal precedent, a review of the jury instructions and jury verdict demonstrate the damages award was to compensate for compensable injuries of "emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life." Ex.1, Case No. 3:98-cv-00253, Doc. 66, at 9 (jury instructions) & Ex. 2, Doc. 67, at 3 (verdict).

6

*Miami for Peace, Inc. v. Miami-Dade Cnty.*, Case No. 07-21088-CIV, 2008 WL 3163383, at *12 (S.D. Fla., June 4, 2008) (granting permanent injunction on First Amendment challenge to permit ordinance and ordering mediation to address remaining issues of attorneys' fees and compensatory damages for out-of-pocket expenses for portions of their protests negatively impacted by ordinances).

There also have been awards of compensatory damages in panhandling cases after jury trials in other circuits. *See Pindak v. Dart*, 125 F. Supp. 3d 720, 768 (N.D. Ill. 2015) & Ex. 3 (judgment of liability and $1,500 in compensatory damages awarded per plaintiff, vacated per settlement).[6] Other cases have reached settlements resulting in payments of money damages to plaintiffs in panhandling cases. *Norton v. City of Springfield, Ill.*, 806 F.3d 411 (7th Cir. 2015) & Ex. 4 (settlement of $2500 for each plaintiff). This includes two Florida cases, including a challenge to the same statutes at issue here. *Chase v. City of Gainesville*, Case No. 1:06-cv-44-SPM-AK, 2006 WL 3826983 (N.D. Fla., Dec. 28, 2006) & Ex. 5 (settlement of $3,250 and $5,500 for each plaintiff); *Booher v. Marion Cnty.*, Case No: 5:07-cv-00282-WTH-GRJ, 2007 WL 9684182 (M.D. Fla. 2007) & Ex. 6 ($10,000 in compensatory damages for plaintiff).

---

[6] The jury was instructed that they could award compensatory damages for loss of income, emotional distress, and injury from being prevented from exercising their First Amendment right to panhandle. (Ex. 3, at 7.) The damages instruction for loss of opportunity to speak is consistent with that circuit's precedent. *See, e.g.*, *City of Watseka v. Ill. Public Action Council*, 796 F.2d 1547, 1559 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987) (affirming damages award for "specific, compensable, non-abstract harm" caused by preventing plaintiff from exercising First Amendment rights and that was not based on "any abstract value of the constitutional right").

### III.   Vigue suffered actual injury caused by the Sheriff's enforcement of the unconstitutional statutes that is compensable.

As discussed in more detail below, the uncontroverted facts establish that Plaintiff has suffered actual injuries due to Defendant's violation of his First and Fourteenth Amendment rights that are compensable with money damages. Vigue seeks damages to compensate him for emotional and mental distress and loss of liberty, including actual out-of-pocket expenses to bond out of pre-trial detention and booking fees assessed at the jail. Compensatory damages for violations of constitutional rights are not limited to out-of-pocket losses and other monetary harms. *Slicker*, 215 F.3d at 1229. Compensatory damages under 42 U.S.C. § 1983 may also be awarded for "physical pain and suffering," "demonstrated mental and emotional distress, impairment of reputation, and personal humiliation." *Id.* at 1231; s*ee also* 5.13 Civil Rights – 42 U.S.C. § 1983 Claims – Damages, 11th Cir. Civil Pattern Jury Instructions (2020).

Actual injury may be inferred from the facts. *H.C. by Hewett*, 786 F.2d at 1088. The "elements and prerequisites for recovery" may vary depending on the interests protected by the constitutional right at issue. *Carey*, 435 U.S. at 264-65. Common law tort rules of damages are generally used by courts to calculate damages flowing from injuries caused by constitutional violations. *Id.* at 257. Where the interests protected by a particular branch of the common law of torts parallel closely the interests protected by a particular constitutional right, then the law of torts may be directly applied. *Id.* at 258. In other cases, the common law of torts may need to be adapted where the interests protected by a particular constitutional right are not protected by

8

an analogous branch of tort. *Id.* Just as in tort claims, courts of law are equipped to make judgments concerning causation and magnitude of injury to compensate for violations of constitutional rights. *Id.* at 259; *see also King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (discussing the issue of quantification of compensatory damages for First Amendment injury which is not subject to a formula, but left to the sound discretion of the fact finder) (*see also* Order, ECF 77, at 47, citing *King*).

### a.  Mental and Emotional Distress

Vigue seeks money damages for emotional injury which is compensable under section 1983 for "humiliation, embarrassment, and mental distress resulting from the deprivation of a constitutional right." *H.C. by Hewett*, 786 F.2d at 1088; *see also Slicker*, 215 F.3d at 1231 ("In addition to damages based on monetary loss or physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation.").

Mental and emotional distress is compensable if actual injury is proved by showing the nature and circumstances of the wrong and its effect on the plaintiff. *Carey*, 435 U.S. at 264. As the Fifth Circuit observed:

> [e]motions are intangible but they are nonetheless perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock. Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store. Thus, in a number of cases, the federal courts have recognized that personal humiliation, embarrassment, and mental distress imposed as a result of the deprivation of constitutional rights are injuries whose redress in damages is considered compensatory.

*Baskin v. Parke*r, 602 F.2d 1205, 1209 (5th Cir. 1979).

The Eleventh Circuit has not adopted a "specific formula" for calculation of emotional injury. *H.C. by Hewett*, 786 F.2d at 1089. Courts have discretion in deciding the amount of damages to be awarded. *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) (upholding $100,000 compensatory damages award for emotional distress in case under sections 1981 and 1983); *see also Robinson v. Fetterman*, 378 F. Supp. 2d 534, 545 (E.D. Pa. 2005) (non-economic compensatory damages in amount of $35,000 awarded for monetary loss, humiliation, and mental anguish caused by deprivation of constitutional rights for arrest that occurred when exercising his First Amendment right to videotape police conduct).

Damages for emotional distress "'may be inferred from the circumstances as well as proved by the testimony.'" *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983), quoting *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). Although "the amount of damages is incapable of exact measurement," this "does not bar recovery for harm suffered." *Id.* In *Marable*, the court found in a housing discrimination case that the plaintiff's testimony that he had been embarrassed and humiliated by defendant's refusal to rent an apartment to him (which included laughing at his desire to live in a predominantly white section of town and hanging up on him) was sufficient to establish right to an evidentiary hearing for court to evaluate issues as to proof of amount of compensatory damages. *Id.* at 1220-21.

In this case, evidence of actual injury in the form of humiliation, embarrassment, and emotional distress is established by plaintiff's testimony, corroborated by the

10

undisputed facts of what occurred, and inferred from the circumstances. During his deposition by Defendant, Plaintiff testified about the emotional harm he has suffered as a result of the Sheriff's enforcement of the unconstitutional statutes against him personally:

- ECF 60-9, at 119:19-120:1, describing damages suffered as "humility [sic]," "Because I'm poor and because you're a cop doesn't mean you're better than me, doesn't mean you can judge me, and it doesn't mean you can lie on me..."

- *Id.* at 121:2-5, in response to a question about damages suffered, "What I believe is you don't go harass people, you don't badger them because you're a cop, that doesn't give you the right to go do that, and that's what they've done to me."

- *Id.* at 121:23-122:13, analogizing emotional injury for being taken to jail "for holding a sign" to physical injury caused by excessive force, "… you found out how you feel if you don't feel beat up."

- *Id.* at 123:1-11, further describing distress from being taken to jail for holding a sign, "My heart is broke because all of them days I spent in jail, I couldn't smile, all right. And I couldn't see any smiles. And I'm put in a place for not doing anything wrong, being an American citizen, being nice, playing nice, not stealing, not robbing, get out. American police force does what the hell they want, no. I'm an American citizen standing up for American rights, that's what I'm doing."

- *Id.* at 142:10-13, "I don't like being harassed while I'm holding a sign just because I'm holding a sign…"

This testimony is corroborated by the undisputed facts of what happened to Plaintiff during enforcement actions by the Sheriff. (ECF 77, at 5-14.) Sheriff's deputies told Vigue he was required to obtain a permit, but after he made inquiry to obtain one was told there is no permit available to him. (ECF 60-9, Vigue, at 75:17-77:1.) The Sheriff enforced the statutes requiring him to obtain such a permit, *see* Fla. Stat. § 316.2045(2), even though the Sheriff knew no permit was available in St. Johns County by which Vigue could ever obtain permission to hold his sign. (ECF 77, at 15-16; ECF 59, at 5 ¶ 4, 7 ¶ 9.)

The injury suffered by Vigue was not a one-time incident, but involved the following direct penalization for exercise of his constitutional rights:

•        Ten different Sheriff's deputies cited or arrested Vigue on twelve different occasions (not counting other deputies who assisted or were otherwise involved in the arrests/citations) under Fla. Stat. § 316.2045. (Ex. 7.) This demonstrates that it was the Sheriff's enforcement policy that was causing the harm, and not simply one or two rogue officers due to the widespread and continual pattern of stopping, questioning Vigue about having a permit warning, and citing or arresting him. (ECF 59, at 5-7 ¶¶ 4-9.)

•        Full custodial arrests on three occasions under Fla. Stat. § 316.2045(2) (11/13/18, 1/8/19, and 1/13/19) and all or part of up to seven cumulative days in jail with Vigue bonding out from pre-trial detention on bonds set at $200 (11/13/2018 arrest) and $500 (1/13/2019 arrest) or released upon dismissal of the charges at first appearance (1/8/2019). (Exs. 8-11.) Vigue faced prosecutions for these charges,

which are second degree misdemeanors, subjecting him to: threatened loss of liberty in the form of jail time of up to 60 days, Fla. Stat. § 775.082(4)(b); a $500 fine, Fla. Stat. § 775.083(1)(e); and mandatory court costs of $273.00.[7] All of those cases were ultimately nolle prossed.

- Criminal citations without full custodial arrests under Fla. Stat. § 316.2045(2) on four occasions (4/8/2017, 11/25/2017, 2/13/2019, 2/22/2019), one of which involved handcuffing Vigue before releasing him (2/22/2019). Vigue faced prosecutions for these charges, subjecting him to prospective loss of liberty and the fees and court costs detailed above. No information was filed in the 4/8/2017 case, and the other three were nolle prossed. (Ex. 7.)

- Non-criminal traffic citations under Fla. Stat. § 316.2045(1) on five occasions (6/28/2016, 10/2/2018, 1/8/2019, 3/7/2019, 3/11/2019). Vigue pled guilty to the first, was assessed a fine of $64.50, and all subsequent ones were dismissed. (*Id.*)

Vigue's efforts to assert his constitutional rights also support his claim that the Sheriff has caused actual mental and emotional injury. With the exception of his first non-criminal traffic citation under Florida statute § 316.2045(1) issued in 2016 (to which he pleaded guilty in exchange for a fine of $64.50), he pled not guilty to every state court charge under Florida statute § 316.2045(1) or (2) that the Sheriff initiated

---

[7] Misdemeanor Mandatory Costs include: $20 County Crime Prevention Fund, Fla. Stat. § 775.083(2); $3 Clearing Trust Fund, § 938.01(1); $50 Crimes Compensation Trust Fund, § 938.03; $60 Misdemeanor Offense, § 938.05; $2 Crimes Justice Education, § 938.15; $65 Local Programs, § 939.185(1)(a); $3 Teen Court, § 938.19(2); $20 Crime Stoppers Trust Fund, § 938.06(1); and $50 Prosecution/Investigative Costs, § 938.27.

against him. (*Id.*) Through his pro bono criminal defense attorney (ECF 60-9, at 125:1-14), he began challenging the constitutionality of Florida statute § 316.2045(2) with his April 2017 criminal citation and filed three subsequent motions to dismiss state court proceedings. (*Id.*; *see also* Ex. 12.) None of the 11 court proceedings in which Vigue pled not guilty proceeded to an adjudication because every single case was dismissed, nolle prossed, or no information was filed. (Ex. 7.) Nevertheless, the arrests and citations continued. Indeed, four of Vigue's 12 citations and arrests under § 316.2045 occurred after 2/12/2019 when he filed this instant litigation and a motion for preliminary injunction to stop the repeated arrests. This escalation in arrests after the filing of the lawsuit demonstrates the extraordinary struggles, and corroborates his testimony of the mental toll, of Vigue's efforts to vindicate his constitutional rights against a backdrop of repeated police harassment.[8]

Further, along with the undisputed facts regarding Vigue's arrests, citations, and outcomes of the state court proceedings, there are additional facts in the record that corroborate Plaintiffs' testimony of emotional harm and that provide a fact finder with a reasonable basis to infer that such harm occurred. The undisputed facts

---

[8] Though not directly relevant to the issue of damages, in cases involving First Amendment retaliation, courts look at whether a defendant's conduct would deter a person of ordinary firmness in the exercise of First Amendment rights. *See generally Bennett v. Hendrix*, 423 F.3d 1247, 1254-55 (11th Cir. 2005). By way of analogy, although Vigue may be an unusually determined plaintiff who persists in his protected activity and demonstrates a will to vindicate those rights, "there is no reason to 'reward' government officials for picking on unusually hardy speakers." *Id.* at 1252. Vigue's injury is clear when viewed objectively in the context of the continued and prolonged harassment for exercising constitutional rights. *Cf. id.* at 1254. An ordinary person would suffer emotional distress under such circumstances. *See Marable*, 704 F.2d at 1220 (damages for emotional distress may be inferred from circumstances).

demonstrate that the Sheriff's office used the enforcement of Florida Statute § 316.2045 against Vigue as a training exercise, with two of his citations/arrests coming at the direction of training officers who ordered their trainees to enforce the statute against Vigue. (ECF 59, at 6 ¶ 6.) Deputy Adams arrested Vigue at the command of his training officer O'Connell (ECF 59-12, Adams, 11:4-14:16). Deputy Tschannerl issued a citation to Vigue at the command of his training officer Cash (ECF 59-13, Tschannerl, 9:4-11:14, 15:23-18:8, 24:23-25:13), who was himself also responsible for citing/arresting Vigue on two different occasions. (Ex. 7.)

In addition to citations/arrests, Vigue had repeated contacts with Sheriff's deputies and received warnings to stop holding his sign and/or to move along. (ECF 77, at 6; ECF 59, at 7 ¶ 8.) Illustrative examples include (but are not limited to) the following prior to the filing of this lawsuit:

- 12/11/2017: move along order by deputy when Vigue was panhandling at the light (ECF 67-1, at 27-28; ECF 67-2, at 7, Smith, Tr. 25:11-28:7);

- 07/17/2018: deputy issuing Vigue verbal warning when standing on shoulder of road, stating it was "best if found new location" (ECF 67-1, at 48-50; ECF 67-2, at 8, Smith, Tr. 29:23-32:13);

- 08/18/2018: deputy issuing verbal warning advising Vigue not to panhandle (ECF 67-1, at 57-59; ECF 67-2, at 8-9, Smith, Tr. 32:22-34:23);

- 08/16/2018: deputy made contact with Vigue panhandling on sidewalk who advised he would move along (ECF 67-1, at 63-65; 67-2, at 9, Smith, Tr. 34:24-36:11);

- 08/17/2018: deputy asked Vigue to move along while panhandling (ECF 67-1, at 66-68; ECF 67-2, at 9-10, Smith, Tr. 36:12-38:19).

Additional examples after the filing of the lawsuit:

- 02/15/2019: deputy requested Vigue to leave while panhandling (ECF 67-1, at 102-03; ECF 67-2, at 10, Smith, Tr. 38:20-40:15);

- 03/05/2019: deputy warned Vigue to quit panhandling or he could receive a ticket (ECF 67-1, at 106-07; 67-2, at 11, Smith, Tr. 41:22-43:12);

- 03/21/2019: deputy spoke with Vigue while panhandling who advised he would leave (ECF 67-1, at 110-12; 67-2, at 11-12, Smith, Tr. 43:13-46:8).

Even after obtaining a preliminary injunction, Vigue had additional contacts with Sheriff's deputies in relation to him holding his sign, documented by the Sheriff's own records. For example, during an encounter with a Sheriff's deputy on July 10, 2019, the deputy reported that Vigue refused to leave while panhandling, citing the injunction. (ECF 67-1, at 138-40; ECF 67-2, at 12-13, Smith, Tr. 47:5-50:4; *see also* Ex. 13.)[9] One deputy took two videos of Vigue on his cell phone camera just a few days after the preliminary injunction was entered, which he sent to notify his supervisor that the "violation" of "soliciting in the roadway without a permit" was still occurring. (Ex.14, Floyd, 11/20/19 Depo., at 7:22-9:20 & videos that are available but not

---

[9] Attached as Exhibit 13 are Call History records from the Sheriff related to an encounter on 06/16/2020 between Vigue and Sheriff's deputies. The notes do not contain details of the stop, but Vigue proffers that during this encounter he was stopped and told to leave, but that only after he informed the deputies of the injunction did they allow him to stay there. As this occurred after the close of discovery, Vigue does not have additional evidence and thus submits his proffer.

attached as exhibits to this proffer.) Although none of those contacts resulted in an arrest, particularly after Vigue informed deputies of the existence of the injunction, Vigue continues to have interactions with Sheriff's deputies who stop and question him while he is holding his sign.[10] (*See, e.g.*, ECF 60-9, at 49:16-52:17.)

Also during the pendency of this litigation, the Sheriff's office re-tasked a detective in its Special Investigations unit, ordinarily dedicated to investigating internet crimes against children, to conduct undercover photo and video surveillance of Vigue holding his sign to look for "violations" of a state statute that the Sheriff was already enjoined from enforcing against Vigue. (ECF 65-3; Ex. 15, Toubaili 12/16/2019 Deposition.)[11] The surveillance efforts took place at the direction of the detective's supervisor, and occurred on 9/3/2019, 9/17/2019, 09/22/2019, 09/29/2019, 09/30/2019, 10/01/2019, 10/02/2019, 10/04/2019, and 10/25/2019. The detective found Vigue on five of those dates and surveilled him for up to two hours at a time, taking photos and videos on three of those dates. Under those circumstances, any ordinary person would suffer emotional and mental harm, consistent with Vigue's testimony and as can be reasonably inferred from the factual circumstances.

---

[10] Vigue proffers he had additional contacts in October 2020 with Sheriff's deputies related to him being stopped while holding his sign, but has not yet received relevant records from the Sheriff through a records request to counsel for Defendant.

[11] Vigue does not attach to this proffer the photos and videos taken of him during Detective Toubaili's surveillance, which include 55 photos taken on 09/13/2019; 18 videos and 5 photos taken on 10/01/2019; and 6 videos taken on 10/25/2019. One of the videos taken on 10/25/2019 was filed with this Court by Defendant in support of his Motion for Summary Judgment. (ECF 61.)

### b. Loss of Liberty

Courts allow compensatory, not merely nominal, damages "where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful." *Kerman,* 374 F.3d at 124. The reasoning behind such awards is rooted in an analysis of the entitlement to damages at common law for the tort of false imprisonment. *Id.* at 125. This tort was complete with even a brief restraint of the plaintiff's freedom and no other damage was required outside of the fact of confinement itself. *Id.* "The damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty." *Id.* at 125-26.

General damage did not need to be proved specifically; instead, it could be inferred from the circumstances of the arrest or imprisonment and would include at least the value of the time lost by the plaintiff during the period of detention. *Id.* at 125; *cf. H.C. by Hewett*, 786 F.2d at 1088 (actual injury may be inferred from conditions and length of adult confinement in determining compensation for wrongful incarceration in isolation); *Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990) ("Mental suffering is also a proper compensable element for false imprisonment, including disgrace, humiliation or a feeling of degradation or inferiority, injury to the feelings, fright, and embarrassment.").

"The right to be free of illegal arrests and imprisonments is one of our most precious constitutional rights." *Manfredonia v. Barry*, 401 F. Supp. 762, 770 (E.D.N.Y. 1975). Awards for loss of liberty vary widely depending on the circumstances and in making such awards "courts have considered the time spent in jail, the mental anguish suffered, any damage to the plaintiff's reputation, and any other relevant criteria." *Rhodes v. Lauderdale Cnty., Tenn.*, Case No. 2:10-cv-02068, 2012 WL 4434722, at *11 (W.D. Tenn. Sept. 24, 2012) (collecting cases); *see also H.C. by Hewett*, 786 F.2d at 1089 (reciting various formulas for calculation of compensation for solitary confinement); *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013) (reversing verdict awarding $0 for an unlawful term of imprisonment in violation of plaintiff's First Amendment rights, holding that plaintiff was entitled to compensatory damages as a matter of law "for each day that he spent in prison as a result of the violation of his constitutional rights by the state defendants").

Vigue suffered out-of-pocket expenses related to the loss of liberty for bonding out of jail ($700) and was assessed $20 as a jail booking fee for each booking ($60). (Exs. 9-11 & ECF 60-9, at 123:25-124:7.) He also spent seven days in jail fully attributable to the enforcement of Fla. Stat. § 316.2045(2), counting one day for each day he spent part or all of that day in jail. Vigue's loss of liberty for the seven-day period, and his out-of-pocket costs, are proximately caused by the Sheriff's enforcement of Fla. Stat. § 316.2045(2). *See Jackson*, 206 F.3d at 1168. This is compensable harm.

IV.     Any duty Vigue had to mitigate damages was met here.

Defendant raised, as an Affirmative Defense, that "Plaintiff failed to mitigate his alleged damages, if any." (ECF 20, at 2 ¶ 3.) Generally, in a damages claim under section 1983 there is a duty to mitigate. *Murphy v. City of Flagler Bch.*, 846 F.2d 1306, 1309 (11th Cir. 1988). *See also* 5.13 Civil Rights – 42 U.S.C. § 1983 Claims – Damages, 11th Cir. Civil Pattern Jury Instructions (2020). Under common law, "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." Restatement (Second) of Torts § 918 (1965). However, Plaintiff does not have a duty to refrain from the peaceful exercise of constitutionally protected expression, particularly here where the government made the lawful exercise of speech dependent upon obtaining a permit that was non-existent. On the contrary, the Supreme Court has made clear "that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969).

The duty to mitigate arises after the injury occurs, but it is not plaintiff's obligation "to mitigate damages until the injury causing those damages actually occurs." *Miller v. Lovett*, 879 F.2d 1066, 1070 (2d Cir. 1989), partially abrogated on other grounds by *Graham v. Connor*, 490 U.S. 386, 392 (1989) (Eighth Amendment, not Fourteenth, applies to excessive force claims brought by prisoners); *see also City of Watseka,* 796 F.2d at 1558 (rejecting argument that duty to mitigate damages

required conforming charitable solicitation efforts to unconstitutional ordinance). Further, Vigue's willingness to continue exercising his First Amendment rights despite repeated arrests does not discount his humiliation and outrage from disruption of his free speech. *See Tatum v. Morton*, 562 F.2d 1279, 1283 (D.C. Cir. 1977).

The uncontroverted facts establish that Plaintiff mitigated his damages through the use of reasonable efforts. With the exception of his first citation under Fla. Stat. § 316.2045(1), for which he pled guilty and received a $64.50 fine on 6/28/2016, he pled not guilty to every other charge. Through pro bono defense counsel (ECF 60-9, at 125:1-14), Vigue filed a motion to dismiss raising substantially similar arguments as those presented in the instant lawsuit as to the statute's constitutionality starting with his first citation under § 316.2045(2) on 4/18/2017. (Ex. 12.)

Defendant conducted full custodial arrests and booked Plaintiff into jail for violation of Fla. Stat. 316.2045(2) on three occasions. (Exs. 3 & 8.) He was released at first appearance when the State Attorney nolle prossed the case for his 1/8/2019 arrest, resulting in one day in jail. On the other two occasions, Plaintiff posted bond to obtain his release from jail after entering not guilty pleas. He posted bonds of $200 (11/13/2018) and $500 (1/13/2019), mitigating his damages for loss of liberty through pre-trial detention. (*Id.*; *see also* ECF 60-9, at 123:25-124:7.) This is a reasonable effort to mitigate damages for loss of liberty, which would have been substantially higher had Plaintiff not had the funds or means to secure his pre-trial release. *See Tatum*, 562 F.2d at 1283 (posting bond is one consideration in reasonableness of duty

to mitigate, as is plaintiffs' insistence on the process that is due to him by persons in the criminal justice system other than police).

Plaintiff did not receive a state court ruling on the merits of his defense that he was being charged under an unconstitutional statute due to no fault of his own. Every time his lawyer filed a motion to dismiss or he otherwise contested the charges through a not guilty plea, the cases were dismissed 11 out of 11 times. Plaintiff filed the instant lawsuit and a motion for preliminary injunction on February 12, 2019. (ECF 1 & 2.) Defendant responded by arresting/citing him an additional four times, and two out of the four prosecutions were not dismissed until after Plaintiff obtained a preliminary injunction from this Court. (Ex. 7.) Thus, a third of the arrests/citations for which Plaintiff was never convicted occurred after he initiated this lawsuit. Despite the fact that Defendant was already aware of prior court rulings declaring the challenged statutes unconstitutional (and certainly was on notice after the filing of the preliminary injunction in this case), Defendant continued to repeatedly arrest, cite, and warn Plaintiff. (ECF 59-8, at 25:1-28:19, 30:23-38:10.) This underscores that the amount of damages incurred in this case could not be reasonably mitigated when Defendant demonstrated a firm commitment to a continuous campaign of directly penalizing Plaintiff for exercising his constitutional rights.

## V.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order finding that is entitled to compensatory damages as a matter of law, in an amount to be determined, for injuries in the form of emotional and mental distress and

loss of liberty caused by Defendant's enforcement of the unconstitutional statutes to penalize his constitutionally protected speech of holding a sign asking for charity on the public roadways in St. Johns County. *See Slicker*, 215 F.3d at 1229 (plaintiff "required to prove actual injury in order to be entitled to compensatory damages.").

Dated:          November 25, 2020

Respectfully submitted,

*/s/Kirsten Anderson*
Kirsten Anderson, Fla. Bar No. 17179
TRIAL COUNSEL
Kirsten.anderson@southernlegal.org
Jodi Siegel, Fla. Bar No. 511617
Jodi.siegel@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890
Fax: (352) 271-8347

Tristia Bauman (Pro Hac Vice)
District of Columbia Bar No. 1016342
Tbauman@nlchp.org
National Law Center on
   Homelessnes & Poverty
2000 M Street NW, Suite 210
Washington, DC 20036
(202) 638-2535 x. 102
Fax: (202) 628-2737
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic notice generated through the CM/ECF service on November 25, 2020, on all counsel or parties of record.

/s/ Kirsten Anderson
ATTORNEYS FOR PLAINTIFFS